**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Carlos Enrique U. R.,             Civ. No. 19-1063 (MJD/BRT)

        Petitioner,

v.             **REPORT AND RECOMMENDATION**

Secretary of Homeland Security, et al.,

        Respondents.

---

Michael D. Reif, Esq., Robins Kaplan LLP, counsel for Petitioner Carlos Enrique U.R.

Benjamin Casper Sanchez, Esq., James H. Binger Center for New Americans, University of Minnesota Law School, counsel for Petitioner Carlos Enrique U.R.

David W. Fuller, Esq., Assistant United States Attorney, counsel for Respondents.

BECKY R. THORSON, United States Magistrate Judge.

In this petition for a writ of habeas corpus under 28 U.S.C. § 2241, Petitioner Carlos Enrique U.R. requests release from, or a bond hearing in relation to, his ongoing detention by the Department of Homeland Security ("DHS"). (Doc. No. 3, Habeas Pet.) For the reasons stated below, this Court recommends that the petition be granted and Petitioner receive a bond hearing before an immigration judge.

**I.  Background**

Petitioner is a native of Mexico who entered the United States without admission or parole near Nogales, Arizona in October of 1993. (Doc. No. 23, Declaration of John Ligon ("Ligon Decl.") ¶ 4, Ex. 1.) Petitioner's criminal record includes convictions for

driving under the influence of alcohol in 1996 and 2004, and disorderly conduct stemming from a domestic assault in 2004. (*Id.* ¶ 8, Ex. 6.)

In late March of 2017, Petitioner was arrested for charges related to driving while intoxicated. (*Id.* ¶ 4, Ex. 1.) Petitioner struck and severely injured a pedestrian while driving drunk, causing the victim to suffer a significant traumatic brain injury requiring emergency brain surgery, among other serious injuries. (*Id.* ¶ 5, Ex. 2.) On March 31, 2017, ICE Enforcement and Removal Operations ("ERO") arrested Petitioner in St. Paul, Minnesota, and issued a Notice to Appear, charging him as removable as an alien present without admission or parole. (*Id.* ¶ 4, Ex. 1.) Petitioner acknowledged receipt of the Notice to Appear, admitted the allegations, and conceded the charge. (*Id.* ¶ 12, Ex. 8.)

On April 20, 2017, an immigration judge at Fort Snelling, Minnesota denied Petitioner's request for bond. (Ligon Decl. ¶ 6, Ex. 3.) Petitioner was represented by counsel and appealed the custody decision to the Board of Immigration Appeals ("BIA"). (*Id.* ¶ 7, Ex. 4.) On May 24, 2017, the immigration judge who denied bond wrote a bond determination memorandum explaining her decision. (*Id.* ¶ 8, Ex. 5.) The immigration judge wrote that given the serious threat to public safety represented by drunk driving, Petitioner's past history of DUIs, and the fact that he injured a person with his car, he should be held throughout his removal proceedings. (*Id.*)

On July 11, 2017, a different immigration judge at Fort Snelling granted "cancellation of removal" relief after finding that Petitioner, though having no immigration status, had lived in the United States continuously for well over twenty years; is a person of good moral character who is exceptionally devoted to his family and a leader in his church and community; and Petitioner's three children—all U.S. citizens,

one of whom is disabled—would suffer "exceptional and extremely unusual hardship" if Petitioner were removed to Mexico. (Doc. No. 2-1, Pet'r's Ex. B at 7–11.) The DHS appealed this decision to the BIA. (Ligon Decl. ¶ 11.)[1]

On July 18, 2017, the BIA dismissed Petitioner's bond appeal, recognizing that "drunk driving is an extremely dangerous crime which creates a serious potential risk of physical injury to others." (Ligon Decl. ¶ 10, Ex. 7.) On September 6, 2017, however, upon Petitioner's request for bond redetermination, the same immigration judge that granted Petitioner cancellation of removal on July 11, 2017, granted Petitioner a bond of $5,000 on the condition that Petitioner be transferred to an inpatient treatment program. (Ligon Decl. ¶ 12, Ex. 8.) Petitioner posted bond and was released the same day. (Ligon Decl. ¶ 12.)

On June 28, 2018, the BIA vacated the July 11, 2017 cancellation of removal and ordered Petitioner removed to Mexico. (Ligon Decl. ¶ 13; Doc. No. 2-1.) On July 26, 2018, after Petitioner was convicted for criminal vehicular operation, ERO St. Paul arrested Petitioner at the Ramsey County, Minnesota Government Center. (Ligon Decl. ¶ 14.) The next day, Petitioner filed a Motion to Reopen and for Emergency Stay of Removal with the BIA. (*Id.* ¶ 15.) Petitioner also filed a stay request and Petition for Review with the Eighth Circuit. (*Id.*; Doc. No. 2-1, Pet'r's Ex. E.) On July 30, 2018, Petitioner filed a stay request with ERO St. Paul, which was denied the same day. (Ligon Decl. ¶ 16.)

---

[1] If the cancellation of removal decision were to become final, Petitioner would be granted lawful permanent resident status.

ERO St. Paul scheduled Petitioner for removal to Mexico on August 1, 2018, but the day before, on July 31, 2018, the Eighth Circuit granted a temporary stay of removal on an emergency basis, so Petitioner was taken off the removal manifest. (*Id.* ¶¶ 16, 18; Doc. No. 2-1, Pet'r's Ex. E.) On August 13, 2018, the Eighth Circuit granted a stay of removal pending resolution of the underlying petition for review. (Doc. No. 2-1, Pet'r's Ex. E.)

Petitioner has remained in custody, and on February 7, 2019, pursuant to a custody review of Petitioner's detention, ERO St. Paul notified Petitioner he would remain detained based on his convictions for DUI, criminal vehicular operation, and disorderly conduct. (*Id.* ¶ 20, Ex. 10.) Oral argument on Petitioner's appeal to the Eighth Circuit took place on June 11, 2019. *See Robles v. Barr*, No. 18-2601 (8th Cir.).

## II.  Analysis

Petitioner argues that his detention is covered by Section 236 of the INA, which governs the civil detention of aliens before and during removal proceedings. *See* 8 U.S.C. § 1226. The Government disagrees, arguing that the applicable provision is Section 241, which governs the detention of aliens who have already been ordered removed. 8 U.S.C. § 1231.

The Government's argument has some facial appeal because, as discussed above, Petitioner *was* subject to a final order of removal. On June 28, 2018, the BIA ordered that Petitioner be removed to Mexico, and as Petitioner concedes, the Government would have been within their rights to remove him from that point until July 31, 2018, when the Eighth Circuit granted Petitioner's request for a stay. (Doc. No. 24, Pet'r's Reply 7.)

The Government's argument fails, however, because the plain language of the statute provides that the removal period begins on the *latest* of the following:

(i) The date the order of removal becomes administratively final.

(ii) *If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien*, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added). Thus, while Petitioner was previously subject to a final order of removal under subsection (i),[2] the removal period is now governed by subsection (ii) because of the Eighth Circuit's stay of removal. Under the plain language of that subsection, the removal period has yet to begin. Petitioner's detention is therefore governed by § 1226, not § 1231. *See Hechavarria v. Sessions*, 891 F.3d 49, 56 (2d Cir. 2018) ("Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review. To hold otherwise would ignore the clear language of the statute as well as its internal logic."); *see also Leslie v. Attorney General of the United States*, 678 F.3d 265, 270 (3d Cir. 2012) (abrogated on other grounds) (finding that the "express language of § 1231" leaves "little doubt that an alien,

---

[2] In this regard, courts have observed that a judicial stay tolls or suspends the post-removal detention period. (*See* Doc. No. 22, Gov't's Mem. 15 (collecting cases)); *see, e.g.*, *Jackson v. Johnson*, CIVIL NO. 3:15-CV-2046, 2015 WL 6501304, at *2 (M.D. Pa. Oct. 27, 2015). Put another way, these cases recognize that there can be more than one removal period, as has happened in the instant case.

subject to and within a stay of removal, cannot yet be in the 'removal period' for § 1231 purposes").[3]

Under § 1226(a),[4] an alien "may be arrested and detained pending a decision whether the alien is to be removed from the United States," and "pending such decision, the Attorney General" may "continue to detain the arrested alien" and "release the alien" on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General." 8 U.S.C. §§ 1226(a)(1), (2)(A). For constitutional law purposes, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 527–28 (2003). Courts in this district have utilized a fact-based "reasonableness" standard to address whether pre-removal period detention complies with due process. *See, e.g.*, *Tindi v. Sec't, Dep't of Homeland Sec.*, 363 F. Supp. 3d 971, 977 (D. Minn. 2017).[5]

---

[3]  The Government argues that the Court should afford *Chevron* deference to DHS's reasonable interpretation that 8 U.S.C. § 1231 governs custody after a removal order becomes final. (Gov't's Mem. 19.) *Chevron* deference is inapplicable when, as here, the plain language of the statute is clear. "*Chevron* deference is appropriate only when the language is ambiguous and the intent of Congress is unclear. There is simply nothing ambiguous about the statute at issue." *Hechevarria*, 891 F.3d at 56.

[4]  Petitioner's detention is not governed by the mandatory detention provisions of § 1226(c), which applies to criminal aliens.

[5]  *Tindi* is a § 1226(a) case, and as a general matter, "there are very few cases analyzing habeas petitions challenging pre-removal detention length solely under § 1226(a)." *Ali v. Sessions*, Civil No. 18-2617 (DSD/LIB), 2019 WL 121946, at *3 (D. Minn. Jan. 7, 2019) (reversed and remanded by *Ali v. Brott*, --- Fed. App'x ----, 2019 WL 1748712 (8th Cir. Apr. 16, 2019)). Courts examining detention under § 1226(c) generally apply the same or similar factors. *Muse v. Sessions*, Case No. 18-cv-54 (PJS/LIB), 2018

(Footnote Continued on Next Page)

Petitioner has been detained since July 26, 2018, more than ten months, and courts have held that detention lasting for that amount of time is unreasonable. *See Muse*, 2018 WL 4466052, at *4 (explaining that detentions of eight and ten months have been found unreasonable under the Due Process Clause) (citing *Sajous v. Decker*, 18-cv-2447 (AJN), 2018 WL 2357266, at *1, *7 (S.D.N.Y. May 23, 2018) (eight months), *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months), *Gordon v. Shanahan*, No. 15-261, 2015 WL 1176706, at *3–4 (S.D.N.Y. Mar. 13, 2015) (eight months)). Detention is likely to last at least several months longer, as the Eighth Circuit only recently heard oral argument on Petitioner's appeal on June 11.[6] It is also somewhat in question that the immigration proceedings will result in a final order of removal because by obtaining a stay, Petitioner has apparently demonstrated that he has a high likelihood of winning in the Eighth Circuit. *See Brady v. National Football League*, 640 F.3d 785 (8th Cir. 2011) (explaining that courts consider four factors in determining

---

(Footnote Continued From Previous Page)
WL 4466052, at *3 (D. Minn. Sept. 18. 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018); *Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *3 (D. Minn. Sept.25, 2017); *Phan v. Brott*, No. 17-cv-432 (DWF/HB), 2017 WL 4465285, at *4 (D. Minn. Sept. 14, 2017), *report and recommendation adopted*, 2017 WL 4460752 (D. Minn. Oct. 5, 2017); *Bah v. Cangemi*, 489 F. Supp. 2d 905, 919 (D. Minn. 2007); *Moallin v. Cangemi*, 427 F. Supp. 2d 908, 925 (D. Minn. 2006).

[6]  The Government faults Petitioner for the delay caused by the Eighth Circuit proceedings, but "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Tindi*, 363 F. Supp. 3d at 978–79 (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)).

whether to grant a stay pending appeal, including "a strong showing" that appellant is "likely to succeed on the merits," which is the "most important factor"). Finally, an immigration judge previously found that Petitioner was not a flight risk and released him on bond because of his strong ties to his family and the community, and Petitioner did not flee during the ten months he was released on bond. For these reasons, Petitioner should be granted habeas relief and an immigration judge be ordered to provide Petitioner with a bond hearing.

### III. Recommendation

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a writ of habeas corpus (Doc. No. 3) be **GRANTED**; and

2. An immigration judge be ordered to provide Petitioner with a bond hearing within thirty days.

Dated: June 17, 2019.

*s/ Becky R. Thorson*_____
BECKY R. THORSON
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).